**Barbara LIMA, Plaintiff and Respondent,**

v.

**Earl CHAMBERS, Defendant and Respondent,**

v.

**PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Intervenor and Appellant.**

No. 17622.

Supreme Court of Utah.

Nov. 26, 1982.

Timothy R. Hanson, Salt Lake City, for intervenor and appellant.

David Bert Havas, pro se.

STEWART, Justice:

■ On this appeal we decide whether an automobile liability insurance carrier providing uninsured motorist coverage may intervene as of right as a party defendant in a tort action between its insured and an uninsured motorist tortfeasor. The trial court denied intervention; we reverse.

The facts are not in dispute. In July of 1977 plaintiff, Barbara Lima, was involved in an automobile collision with defendant Earl Chambers, an uninsured motorist. Lima brought a negligence action against Chambers, an answer was filed, and discovery ensued. Thereafter, Chambers' attorney withdrew from the case. The following day Chambers executed an affidavit prepared by plaintiff's attorney acknowledging that he was uninsured and admitting that he had caused the collision with plaintiff Lima. On the basis of that admission, plaintiff moved for and obtained a summary judgment on the issue of defendant's liability, leaving the question of damages to be decided at trial. Thereafter, plaintiff's liability insurer, Prudential Property & Casualty Insurance Company (Prudential), which is contractually liable for a judgment against an uninsured motorist, moved to intervene as a party defendant in the litigation of the damages issue. Apparently considering our prior decision in *Kesler v. Tate,* 28 Utah 2d 355, 502 P.2d 565 (1972), to be controlling, the trial court denied the motion to intervene.

Prudential appeals, urging that we overrule *Kesler* and allow intervention because (1) it will be bound by a judgment against the uninsured motorist and denial of intervention therefore violates its constitutional right to due process; and (2) Rule 24, Utah R.Civ.P., governing intervention, entitles it to intervene as of right. Plaintiff Lima counters that *Kesler* was decided correctly, that Prudential has only a potential contractual obligation to plaintiff with no interest in the pending tort action, and therefore, that neither due process nor Rule 24 requires Prudential's intervention.

I.

Utah Code Ann., 1953, § 41–12–21.1 requires that automobile liability insurance policies include coverage for accidents with uninsured motorists:

[N]o automobile liability insurance policy insuring against loss resulting from liability imposed by law for bodily injury or death or property damage suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered ... unless coverage is

provided in such policy ... for the protection of persons insured thereunder who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. [Emphasis added.]

Thus, if an insured is injured by an uninsured motorist, the insured may recover damages from his own insurance company upon showing that he is "legally entitled" to recover those damages from the uninsured tortfeasor. This showing of legal entitlement typically entails a lawsuit against the uninsured tortfeasor to litigate the issues of liability and damages. A judgment favorable to the insured fixes the insurer's contractual duty to satisfy that judgment, within the policy limits. The insurer is then left to pursue its subrogation remedy against the uninsured tortfeasor.

Because of the direct effect of the tort litigation on the insurer's contractual duty, both insureds and insurers have sought, under certain circumstances, to involve the insurer in the tort litigation. Insureds have pressed for intervention to make the tort judgment binding on the insurer, and insurers have sought intervention to make certain the tort issues are fully and fairly litigated. Three different attempts have been made in this Court to involve an uninsured motorist insurance carrier in the tort litigation between the insured and the uninsured tortfeasor.

The first attempt was in *Christensen v. Peterson,* 25 Utah 2d 411, 483 P.2d 447 (1971). There we held that to avoid the disclosure of insurance coverage to the jury, to prevent the mixture of a contract action with a tort action, and to avoid placing the insurer in a position hostile to its own insured, a plaintiff could not join its insurer as a party defendant in the tort action against the uninsured tortfeasor. The following year in *Kesler v. Tate,* 28 Utah 2d 355, 502 P.2d 565 (1972), we addressed the precise issue raised again on this appeal: Whether the insurer may, on its own motion, intervene as a party defendant in the tort action between the insured and the uninsured tortfeasor. There we concluded that *Christensen v. Peterson* was controlling and, without discussing whether the requirements of Rule 24 were satisfied, held that the insurer could not intervene. Most recently, in *Wright v. Brown,* Utah, 574 P.2d 1154 (1978), we held that the nonparty insurer lacked standing to appeal the default judgment entered in favor of the insured against the uninsured tortfeasor. Thus, one-by-one we have closed all three doors to possible insurer participation in the tort litigation and have thereby effectively precluded the insurer from ensuring that its contractual obligation is properly and fairly invoked. As the law now stands, the insurer may not be joined, may not intervene, and may not appeal. We are here asked to open only the door of intervention.

## II.

The overwhelming majority of courts have allowed an uninsured motorist insurance carrier to intervene in a tort action between its insured and an uninsured tortfeasor. *See, e.g., Oliver v. Perry,* 293 Ala. 424, 304 So.2d 583 (1974); *State Farm Mutual Automobile Ins. Co. v. Brown,* 114 Ga. App. 650, 152 S.E.2d 641 (1966); *Wert v. Burke,* 47 Ill.App.2d 453, 197 N.E.2d 717 (1964); *Indiana Ins. Co. v. Noble,* 148 Ind. App. 297, 265 N.E.2d 419 (1970); *Rawlins v. Stanley,* 207 Kan. 564, 486 P.2d 840 (1971); *Barry v. Keith,* Ky., 474 S.W.2d 876 (1971); *State v. Craig,* Mo.App., 364 S.W.2d 343 (1963), *Dominici v. State Farm Mut. Ins. Co.,* 143 Mont. 406, 390 P.2d 806 (1964); *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606 (1969); *Allstate Ins. Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106 (1969); *Kirouac v. Healey,* 104 N.H. 157, 181 A.2d 634 (1962); *Keel v. MFA Ins. Co.,* Okl., 553 P.2d 153 (1976); *Glover v. Tennessee Farmers Mutual Ins. Co.,* 225 Tenn. 306, 468 S.W.2d 727 (1971). *See also* 7 Am.Jur.2d *Automobile Insurance* § 331 (1980); Annot., 95 A.L. R.2d 1330 (1964); Comment, *Insurer Intervention in Uninsured Motorist Cases,* 55 Ind.L.J. 717 (1980). The weight of these authorities is sufficient to persuade us to reevaluate our construction of Rule 24, upon which the outcome of this case rests.

Intervention of right is asserted in this case under Rule 24(a)(2).[1] By the terms of that rule, an applicant must be allowed to intervene if four requirements are met: 1) the application is timely; 2) the applicant has an interest in the subject matter of the dispute; 3) that interest is or may be inadequately represented; and 4) the applicant is or may be bound by a judgment in the action. The timeliness of the application to intervene in the hearing on damages in this case has not been challenged and is deemed satisfied. The remaining requirements are discussed in order.

1. To justify intervention, the party seeking intervention must demonstrate a direct interest in the subject matter of the litigation such that the intervenor's rights may be affected, for good or for ill. In *State v. Craig*, Mo.App., 364 S.W.2d 343 (1963), the court stated:

> [The required] interest does not include a mere, consequential, remote or conjectural possibility of being in some manner affected by the result of the original action. It must be such a direct claim upon the subject matter of the action that the intervenor will either gain or lose by direct operation of the judgment to be rendered.

*Id.* at 346. *See also State Farm Mutual Automobile Ins. Co. v. Brown*, 114 Ga.App. 650, 152 S.E.2d 641, 646 (1966); *Commercial Block Realty Co. v. United States Fidelity & Guaranty Co.*, 83 Utah 414, 28 P.2d 1081 (1934).

The court in *State v. Craig, supra*, held that an insurer providing uninsured motorist insurance has such a direct and immediate interest because the insurer "should have the right to dispute the questions which make it liable on its contract." 364 S.W.2d at 347. *Heisner v. Jones*, 184 Neb. 602, 169 N.W.2d 606 (1969), relied on that same interest in allowing intervention:

> It is apparent that the questions litigated [in] the action between the insured and

the uninsured tort-feasor, for liability and damages, are the identical issues which determine liability of Protective under the insurance policy and which give rise to Protective's contractual duty to pay the insured. Protective has a direct interest in the matter of litigation within the meaning of our intervention statute.

169 N.W.2d at 611. *Vernon Fire and Casualty Ins. Co. v. Matney*, 170 Ind.App. 45, 351 N.E.2d 60 (1976), identified the interest in similar terms:

> Clearly the basis of the action by Matney [insured] against Vernon [insurer] is contractual. However, any action on the contract is inseparably tied to the legal liability of Thoms [uninsured tortfeasor]. Therefore, the initial action in which the liability of Thoms is determined is but the first link in an unbroken chain leading to the contractual liability of Vernon.

*Id.* 351 N.E.2d at 64. *See also Continental Ins. Co. v. Smith*, 115 Ga.App. 667, 155 S.E.2d 713, 715 (1967). In requiring the insurer to pay its insured what the insured is "legally entitled" to recover from the uninsured tortfeasor, within the limits of the insured's policy, the legislature must have intended that the insurer would "take whatever legal steps were necessary and fitting ... to insure that the judgment against the uninsured motorist ... was rendered on legal and sufficient evidence." *State Farm Mutual Automobile Ins. Co. v. Glover*, 113 Ga.App. 815, 820, 149 S.E.2d 852, 856 (1966).

We agree with the reasoning of the authorities cited and conclude that since the extent of Prudential's contractual liability to its insured will be determined by the amount of damages awarded to its insured in the tort action, Prudential stands to lose by the operation of that judgment, and therefore has sufficient interest in that action to justify intervention.

2. The next issue is whether Prudential's interest is or may be inadequately

---

1. Rule 24(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action.

represented by the existing parties. Since Prudential, if allowed, would intervene as a party defendant, the question is narrowed to whether the uninsured motorist, Chambers, would adequately represent Prudential's interest in actively litigating the issue of damages. Prudential argues that its interest is inadequately represented because Chambers lacks the assistance of counsel and proposes to litigate the damages issue pro se. Because of Chambers' ready admission of liability resulting in the summary judgment establishing Chambers' liability, Prudential has a reasonable basis for anticipating that the damages issue will not be fully and fairly litigated without Chambers' personal liability for the judgment provides sufficient incentive to keep the damages low. Lima also argues that the burden of proof placed on him, coupled with the close supervision of the trial court, will ensure a just judgment.

Adequacy of representation generally turns on whether there is an identity or divergence of interest between the potential intervenor and an original party and on whether that interest is diligently represented. *Alsbach v. Bader,* Mo.App., 616 S.W.2d 147, 151 (1981); Annot., 84 A.L.R.2d 1412 (1962). Generally, where the applicant's interest is different from that of an existing party, the applicant's interest is not represented. While Prudential's interest appears on the surface to be the same as Chambers', the interests are likely divergent. Chambers' primary interest appears to be not in minimizing damages, but in bringing the whole matter to a close as soon as possible, with little regard for the amount of damages awarded. In this case, litigation of the damage issue by Chambers on a pro se basis does not provide adequate representation of Prudential's interest. Although Chambers will be personally liable for the judgment and technically obligated to reimburse Prudential, that does not suffice to assure adequate representation of Prudential's interest.

Closely related to the question of similarity of interests is whether the interest of the applicant, even if assumed to be represented, is represented diligently. Representation is considered to be inadequate if the original party is not diligent in the prosecution or defense of the action or allows a default judgment to be entered. Annot., 84 A.L.R.2d 1412 at § 5 (1962). The close cooperation between plaintiff and defendant in resolving the liability issue in this case evidences an absence of the adverse relationship essential to a full and fair litigation of the damage issue. Moreover, whereas a disinterested attitude of counsel for an uninsured motorist may affect the diligence of representation, an absence of counsel for Chambers in the instant case creates a strong presumption against adequate representation. Proper representation would undoubtedly be hampered further by Chambers' apparent inability to read.

Finally, we reject plaintiff Lima's argument that a fair result is ensured by her having to meet the burden of proof and by court supervision. Neither position has merit. The burden of proof requirement is effective only when a case is actually and fairly litigated in a truly adversarial trial. As for court supervision, we need only remark that it is not the role of a judge to be an advocate. Such a concept is fundamentally contrary to the nature of our adversary system. The court in *State v. Craig,* Mo.App., 364 S.W.2d 343 (1963), responded in like manner to the suggestion that the interests of a defaulting defendant (and hence the interests of the potential intervenor) were adequately protected by the court:

> We think the argument that relator's interest will be "adequately represented" in respect to Count I because the court will require proof of plaintiff's cause is specious. It is not the duty of the trial court to subpoena and interrogate witnesses who might contradict the testimony of plaintiffs or those who might testify to compelling facts which show that plaintiff is not "legally entitled to recover" the damages he claims. The court cannot, and should not, act as attorney for the defaulting defendants. Every

practicing lawyer knows that, in so far as the issues of fact are concerned, the defaulting defendants are not "adequately represented."

*Id.* at 346.

We therefore conclude that Prudential's interest is not adequately represented.

3. Finally, we must decide whether Prudential is or may be bound by a judgment in the tort action. Prudential argues that it is "probably bound" by a judgment against the uninsured tortfeasor. Plaintiff Lima argues that a judgment binds only the defendant Chambers, and not Prudential, whose contractual obligation is merely triggered by the tort judgment.

■ A major conflict of authority exists on the meaning of the word "bound." Annot., 84 A.L.R.2d 1412 at § 6 (1962). Some courts have applied a strict interpretation requiring a showing that the judgment would be res judicata as to petitioner for intervention, thus preventing the retrial of decided issues. Other courts have applied a more liberal construction requiring only a showing that the applicant would be bound in a practical sense. The federal intervention rule and many states' rules have been amended to clear up this ambiguity by deleting the "bound" requirement and requiring only that the judgment in some way impair the applicant's interest. This construction is now applied in the majority of jurisdictions, either under expressly reworded rules of intervention or through a liberal construction of the term "is or may be bound." We are of the opinion that Rule 24 should be liberally construed to achieve the purpose of eliminating unnecessary duplication of litigation. *Centurian Corp. v. Cripps,* Utah, 577 P.2d 955 (1978); *Bartholomew v. Bartholomew,* Utah, 548 P.2d 238 (1976). The language of the rule requiring only that a petitioner show that he "may be

bound," clearly contemplates that the rule should be construed broadly enough to further both fairness and economy in judicial administration.

■ We hold that because section 41–12–21.1 requires insurers to assume financial responsibility for judgments obtained by their insureds against uninsured motorist tortfeasors (within certain limits), and because of the insurer's contractual obligation which embodies that statutory requirement, the insurer "is or may be bound" by the tort judgment within the meaning of Rule 24.[2]

Having concluded that the four requirements for intervention of right have been met, we hold that Prudential should be allowed to intervene in the pending damages litigation between its insured and the uninsured tortfeasor. Having resolved the issue at hand on statutory grounds, we need not address Prudential's constitutional argument concerning denial of due process.

In allowing intervention in this case, we necessarily overrule *Kesler v. Tate, supra,* and thereby partially fulfill Chief Justice Hall's foreshadowing comment in *Wright v. Brown, supra* at 1155, that "the time [could be] nigh to alter the course of the law as set forth in *Christensen v. Peterson* and *Kesler v. Tate.*"

## III.

We do not hold that in each and every uninsured motorist case intervention must be allowed. In each case it will be necessary for the trial judge to make an assessment of the adequacy of representation. If the defendant has counsel who actively litigates the case, intervention may not be appropriate.

■ When intervention is permitted, the intervenor must accept the pending ac-

2. We need not decide whether Prudential might be bound by the judgment under the doctrines of res judicata or estoppel. That question cannot arise until it is established that there is a right to intervene. Presumably, a nonparty insurer could not be bound in a res judicata sense unless it had the right and opportunity to intervene and chose not to. *See Wells v. Hartford*

*Accident and Indemnity Co.,* Mo., 459 S.W.2d 253 (1970); *Alsbach v. Bader,* Mo.App., 616 S.W.2d 147 (1981); *Dominici v. State Farm Mut. Ins. Co.,* 143 Mont. 406, 390 P.2d 806 (1964); *Allstate Ins. Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106 (1969); *Indiana Ins. Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419 (1970).

tion as he finds it; his right to litigate is only as broad as that of the other parties to the action. *E.g., Beard v. Jackson,* Mo. App., 502 S.W.2d 416, 419 (1973). The identity of the intervening insurance company should be made known to the jury, and an intervening insurer must disclose to its insured that their respective interests may be conflicting.[3] The insurer must not be allowed to use against its insured any information whatsoever gained by reason of the insurer-insured relationship. *See Barry v. Keith,* Ky., 474 S.W.2d 876 (1971). Finally, if the insurer has an obligation to defend the insured, for example as a defendant on a counterclaim by the uninsured motorist, the insured should be allowed to choose his own independent counsel who must then be compensated by the insurer.

The order of the trial court denying intervention is reversed and the case remanded for further proceedings. No costs.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

---

3. We recognize that some conflict of interests appears to be inevitable. However, the interest of fairness and judicial economy outweigh, in our view, the potential difficulties arising from a conflict of interest. *See, e.g., Oliver v. Perry,* 293 Ala. 424, 304 So.2d 583 (1974). *Vernon* *Fire and Casualty Ins. Co. v. Matney,* 170 Ind. App. 45, 351 N.E.2d 60, 65 (1976); *Alsbach v. Bader,* Mo.App., 616 S.W.2d 147, 153–54 (1981); *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606, 612 (1969).