*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SUPERNOVA MEDIA, INC., a New York corporation, and
JOCELYN ENGLE, an individual,
*Intervenors and Appellants*,
*v.*
SHANNON'S RAINBOW, LLC, a Utah limited liability company,
SHANNON'S RAINBOW, LLC, a Delaware limited liability company,
SHANNON'S RAINBOW PRODUCTIONS, LLC, a Pennsylvania
limited liability company,
*Plaintiffs*,
*v.*
PIA ANDERSON DORIUS REYNARD & MOSS, LLC,
a Utah limited liability company,
*Defendant and Appellee.*

SUPERNOVA MEDIA, INC., a New York corporation,
*Intervenor and Appellant*,
*v.*
PIA ANDERSON DORIUS REYNARD & MOSS, LLC,
a Utah limited liability company,
*Plaintiff and Appellee*,
*v.*
KELLY H. NELSON, CHARLES MORRISON, SUMMITWORKS, LLC,
SHANNON'S RAINBOW, LLC, et al.,
*Defendants.*

No. 20110368
No. 20110412
Filed February 15, 2013

Third District, Salt Lake
The Honorable Robert K. Hilder
No. 110903542
The Honorable Glenn K. Iwasaki
No. 110903223

Attorneys:

Mary Anne Q. Wood, Kathryn O. Balmforth, Stephen Q. Wood,
Salt Lake City, for appellants

Robert K. Reynard, Brennan H. Moss, Troy L. Booher,
Salt Lake City, for appellees

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    Supernova Media, Inc., and Joycelyn Engle appeal the denial of their motions to intervene as of right in two district court cases that we consolidate for purposes of this opinion. They also appeal the partial sealing of the record in one of the cases. We reverse the denial of the motions to intervene and set aside the sealing order. We remand for the district court to consolidate the cases and allow appellants to intervene.

## BACKGROUND

¶2    The parties to this appeal owe their relationship to the film Shannon's Rainbow, which was created and financed by two media companies: SummitWorks, LLC (SummitWorks), and Supernova Media, Inc. (Supernova). Frank Johnson, a principal of SummitWorks, directed the film. Other principals of SummitWorks include Kelly Nelson and Charles Morrison.[1]

¶3    In 2007, Johnson approached Joycelyn Engle of Supernova for help in raising money for the film. Ms. Engle is a principal of Supernova.[2] The SummitWorks and Supernova parties formed LLCs in Utah, Pennsylvania, and Delaware, each named "Shannon's Rainbow, LLC." Supernova raised much of the film's capital from its investors, Stewart Rahr and Joseph DiPalma, who each invested one million dollars.

¶4    In Mr. DiPalma's investment agreements, Ms. Engle (on behalf of Supernova) and SummitWorks were named as equal co-managers of the Shannon's Rainbow LLCs, such that neither co-manager could act without the other. Ms. Engle also claims a 51 percent ownership interest in the film given to her for investing her personal funds, deferring payments owed to her, and providing her home as collateral for a bridge loan.

¶5    In 2008, Ms. Engle and SummitWorks reached an impasse over whether the film should first be distributed in North America or abroad. Since then, SummitWorks and Supernova have been litigating the issue of who has the right to control distribution of the

---

[1] SummitWorks, LLC, and the parties to this appeal that are associated with it are collectively referred to as "SummitWorks" or the "SummitWorks parties."

[2] Supernova Media, Inc., and Ms. Engle are collectively referred to as "Supernova" or the "Supernova parties."

film and to control the Shannon's Rainbow LLCs generally. This litigation has taken place in the federal district court for the District of Utah and in New York state courts. Supernova investor Joseph DiPalma also filed a lawsuit in New York state court seeking specific performance of his investor agreement, which promised an initial distribution of the film in North America.

¶6    Joseph Pia, a partner in defendant law firm Pia Anderson Dorius Reynard & Moss, LLC (PADRM), served as legal counsel for the Shannon's Rainbow LLCs before and after the impasse. After the impasse, he assisted SummitWorks in their litigation against Supernova and Mr. DiPalma.

¶7    In 2010, the SummitWorks parties stopped paying legal fees to PADRM. After six months of overdue bills, Mr. Pia withdrew from representation and tried to foreclose two liens on the film: an attorney's lien under Utah Code section 38-2-7 and a consensual lien pursuant to a 2009 representation agreement with the Shannon's Rainbow LLCs. Mr. Pia sent notice to SummitWorks (but not Supernova) that he intended to publicly sell the film in February of 2011.

¶8    Mr. Pia then sued the SummitWorks parties and the Shannon's Rainbow LLCs in Utah state court (the first case) seeking money damages and a declaratory judgment that his liens on the film were valid and entitled to priority.[3] Instead of filing a counterclaim, the SummitWorks parties initiated a separate Utah state court action (the second case) against PADRM, seeking a declaration that the consensual lien was invalid and that any foreclosure would have to be accomplished through a judicial proceeding. The SummitWorks parties obtained a temporary restraining order against the public sale of the film and also sought a preliminary injunction.

¶9    Supernova did not receive formal notice of either of these Utah state cases. When Supernova became aware of these cases, it moved on its own behalf, and derivatively on behalf of the Shannon's Rainbow LLCs, to intervene as of right "for the purpose of obtaining a preliminary injunction, and seeking a stay to permit relevant issues to be decided in the pending . . . New York [actions]." The motions to intervene were filed on February 23, 2011, in the

---

[3] Mr. Pia also sued the Supernova affiliates in the federal district court for the District of Utah. In that action, Judge Waddoups ordered Mr. Pia "not [to] take any action or direct any action as to the film at issue here until he is allowed to do so in this action."

second case (before Judge Hilder) and on March 2, 2011, in the first case (before Judge Iwasaki).

¶10 In the second case, SummitWorks and PADRM filed a stipulated motion to close the preliminary injunction hearing and seal the related records, based primarily on their claim that many of the records were protected by attorney-client privilege. Judge Hilder granted the motion. Although they had not been permitted to intervene, the Supernova parties filed a motion to unseal the record.

¶11 Shortly after a hearing on March 21, 2011, PADRM and the SummitWorks parties signed a settlement agreement. At Judge Hilder's request, the parties to the settlement disclosed three paragraphs of their agreement to Supernova. These paragraphs set forth the identity of the parties to the settlement and the scope of the mutual releases between PADRM, the SummitWorks parties, and the Shannon's Rainbow LLCs.[4]

¶12 SummitWorks and PADRM then filed stipulated motions to dismiss both cases under rule 41(a) of the Utah Rules of Civil Procedure. Judge Iwasaki and Judge Hilder granted the motions to dismiss and denied Supernova's motions to intervene. Judge Hilder also ruled that Supernova's motion to unseal the record was mooted by the denial of the motion to intervene. Supernova timely appealed. This court has jurisdiction pursuant to section 78A-3-102(3)(j) of the Utah Code.[5]

**STANDARD OF REVIEW**

¶13 "The standard of appellate review varies depending on the nature of the [district] court's analysis." *Manzanares v. Byington* (*In re Adoption of Baby B.*), 2012 UT 35, ¶ 40, __ P.3d __. We apply a clearly erroneous standard to factual findings and a correctness standard to legal conclusions. *Id.* ¶¶ 40–41. "On mixed questions—involving application of a legal standard to a set of facts unique to a particular case—our review is sometimes deferential and

---

[4] This court has not seen any part of the settlement agreement because it is not part of the record and has not been provided by the parties.

[5] The Supernova parties later learned that although the settlement agreement itself left the film unencumbered, the SummitWorks parties encumbered the film in order to fulfill their obligations under the agreement. In the name of Shannon's Rainbow, LLC (Utah), and Shannon's Rainbow, LLC (Pennsylvania), the SummitWorks parties borrowed $110,000 from a third party using the film as collateral.

sometimes not," *id.* ¶ 42 (footnote omitted), depending on the following factors:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts,

*State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096 (internal quotation marks omitted).

¶14 We have often said that a district court's ruling on a motion to intervene under rule 24(a) is reviewed for correctness. *E.g.*, *Parduhn v. Bennett*, 2005 UT 22, ¶ 13, 112 P.3d 495. However, a ruling on a motion to intervene encompasses several types of analysis, each subject to a different standard of review. *Swallow v. Jessop* (*In re United Effort Plan Trust*), 2013 UT 5, ¶ 15, __ P.3d __. As a general matter, the factual findings underpinning an intervention ruling are subject to a clearly erroneous standard, *Taylor-W. Weber Water Improvement Dist. v. Olds*, 2009 UT 86, ¶ 3, 224 P.3d 709, and the district court's interpretation of rule 24(a) is reviewed for correctness, *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035.

¶15 We review for abuse of discretion the district court's determination of whether the motion to intervene was timely filed. *See Jenner v. Real Estate Servs.*, 659 P.2d 1072, 1073–74 (Utah 1983). Such review is appropriate under the *Levin* factors because timeliness depends on the "the facts and circumstances of each particular case." *Id.* at 1073–74. To determine whether an intervenor substantially and unjustifiably delayed its motion to intervene, a district court must exercise judgment based on the totality of the circumstances. *See id.*

¶16 We review for correctness the district court's determination of whether the intervenor has "claim[ed] an interest relating to the property or transaction which is the subject of the action." UTAH R. CIV. P. 24(a); *In re United Effort Plan Trust*, 2013 UT 5, ¶ 22. Because rule 24(a) requires intervenors only to "claim"—rather than prove—an interest, the district court is not called on to weigh conflicting evidence but rather to determine whether the intervenor

has presented sufficient evidence to make out a "claim." Furthermore, we expect most motions to intervene to be founded on financial, personal, or institutional relationships or interests that "can be adequately reflected in a cold record." *Levin*, 2006 UT 50, ¶ 40.

¶17 The district court's determinations of whether "the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect [the claimed] interest" and whether that interest is "adequately represented by existing parties," are entitled to deferential review. UTAH R. CIV. P. 24(a); *In re United Effort Plan Trust*, 2013 UT 5, ¶ 23. These determinations are fact-intensive and require the court to exercise judgment based on the circumstances of the parties and intervenors, their relationships with one another, the likely results of the litigation, and the nature and quality of the advocacy. Because of the district court's first-hand knowledge of the parties and the proceedings, it is better situated than an appellate court to make these determinations.

¶18 Finally, we review with some deference the district court's ultimate decision to grant or deny a motion to intervene. *In re United Effort Plan Trust*, 2013 UT 5, ¶ 24. If an intervenor meets the requirements of rule 24(a), it has a "right" to intervene, and the court "shall" permit intervention. UTAH R. CIV. P. 24(a). However, the court's assessment of the degree to which the intervenor has met the four requirements of rule 24(a) is an exercise of discretion and therefore entitled to some deference. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) ("Application of [rule 24(a)] requires that its components be read not discretely, but together.").

¶19 Regarding the sealing order, we uphold the district court's factual findings unless they are clearly erroneous, *In re Adoption of Baby B.*, 2012 UT 35, ¶ 40, and we review its interpretation of the relevant rules of the Utah Code of Judicial Administration for correctness, *N.A.R., Inc. v. Walker*, 2001 UT 98, ¶ 4, 37 P.3d 1068. We review for abuse of discretion the district court's application of factual findings to the rules governing closure of court records. *See Soc'y of Prof'l Journalists v. Bullock*, 743 P.2d 1166, 1168 (Utah 1987). Abuse of discretion review is appropriate under the *Levin* factors because before sealing a record, a district court must "balance the interests favoring opening and closing the record." UTAH CODE JUD. ADMIN. R. 4-202.04(3)(B). Balancing is an inherently discretionary task. Additionally, on a motion to seal, some of the "interests" to be balanced may involve confidential information outside of the record.

## ANALYSIS

¶20 Supernova appeals the denial of its motions to intervene as of right under rule 24(a) of the Utah Rules of Civil Procedure. PADRM argues that Supernova is not entitled to intervene because its motions to intervene were untimely and because Supernova lacks an interest in the subject of the litigation. For the reasons discussed below, we conclude that Supernova has met the requirements of rule 24(a) and is entitled to intervene.

¶21 Supernova also appeals the sealing of court records related to the preliminary injunction hearing because the order was not supported by the findings required by rule 4-202.04 of the Utah Code of Judicial Administration or by a consideration of the public's interest in open court records. PADRM argues that the district court was not required to make findings or consider the public's interest because the case was civil, not criminal, and because some of the records may have been privileged. We hold that the district court abused its discretion because courts must always make the findings required by rule 4-202.04, and must consider the public's interest in open court records before issuing a sealing order.

### I. SUPERNOVA WAS ENTITLED TO INTERVENE AS OF RIGHT

¶22 Supernova moved to intervene as of right under rule 24(a) of the Utah Rules of Civil Procedure (URCP). Rule 24(a) provides,

> [u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, Supernova must show (1) that its motion to intervene was timely, (2) that it has "an interest relating to the property or transaction which is the subject of the action," (3) "that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest," and (4) that its interest is not "adequately represented by existing parties." *Id.*

*A. Timeliness*

¶23 Rule 24(a) requires that a motion to intervene be "timely." "[T]imeliness . . . [is] determined under the facts and circumstances of each particular case, and in the sound discretion of the court." *Jenner v. Real Estate Servs.*, 659 P.2d 1072, 1073–74 (Utah 1983). The timeliness requirement is designed to minimize interference with "the rights of existing parties" and "the orderly processes of the court." *Id.* at 1074.

¶24 Generally, a motion to intervene is timely if it is filed before the "final settlement of all issues by all parties," *see Millard Cnty. v. Utah State Tax Comm'n ex rel. Intermountain Power Agency*, 823 P.2d 459, 461 (Utah 1991), and before entry of judgment or dismissal, *see Jenner*, 659 P.2d at 1074. A party may waive its right to intervene by substantially and unjustifiably delaying its motion to intervene. *See Republic Ins. Grp. v. Doman*, 774 P.2d 1130, 1131 (Utah 1989) (affirming the denial of intervention because the intervenor had "notice and opportunity to intervene at an earlier stage of the proceeding" but waited to do so until "every fact necessary for a ruling on [a] motion for summary judgment [was admitted]"). Once a motion to intervene as of right has been timely filed, it cannot become untimely based on the actions of the court or of other parties. *See Millard*, 823 P.2d at 461–62.

¶25 This court has decided at least two cases involving the interplay between a motion to intervene and a settlement agreement. In *Millard,* we held that the county's motion to intervene in a proceeding before the Utah State Tax Commission (Commission) was improperly denied. *Id.* at 460–61. The county's motion to intervene was filed in June, the parties stipulated to the tax liability in August, and the Commission denied the motion to intervene the following February. *Id* at 460. We held that "[t]he settlement of a controversy by the parties before a motion to intervene as of right has been adjudicated does not constitute a final settlement and does not render moot either the motion or an appeal from a denial of that motion." *Id.* at 461. We reversed and remanded for the Commission to reopen the proceedings. *Id.* at 463–64.

¶26 In *Ball v. Public Service Commission (In re Questar Gas Co.)*, we held that a motion to intervene was appropriately denied because it had been filed *after* the parties reached a settlement and over a year after the proceedings commenced. 2007 UT 79, ¶¶ 32–37, 175 P.3d 545. We noted that the settlement was not entered strategically to preempt the motion to intervene. *Id.* ¶ 34. We also noted that the "failure to intervene earlier was not for lack of knowledge or notice

of the proceedings; indeed, [one of the intervenors] originally participated in the proceedings" as an employee of one of the parties. *Id.* ¶ 33.

¶27 The proceedings in *Millard* and *Questar* were governed by the Utah Administrative Procedures Act (UAPA). *See id.* ¶ 31; *Millard*, 823 P.2d at 462. Therefore, Utah Code section 63G-4-207[6]—not URCP 24(a)—provided the standard for intervention. Section 63G-4-207(2) permits intervention when "(a) the petitioner's legal interests may be substantially affected by the formal adjudicative proceeding; and (b) the interests of justice and the orderly and prompt conduct of the adjudicative proceedings will not be materially impaired by allowing the intervention."

¶28 The second requirement of section 63G-4-207(2) is analagous to the requirements of URCP rule 24(b), which governs permissive intervention. Under rule 24(b), a judge "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Section 63G-4-207 similarly permits a judge to deny a motion to intervene based on the effect of the intervention on the original parties. In contrast, timeliness under rule 24(a) is viewed not from the perspective of the original parties but from the perspective of the intervenor. The question under rule 24(a) is whether the intervenor acted with substantial and unjustifiable delay. Therefore, the timeliness requirements of section 63G-4-207 and rule 24(a) are not identical for all purposes.

¶29 We hold that the requirements are similar, however, in that under rule 24(a), as under section 63G-4-207, "[t]he settlement of a controversy by the parties before a motion to intervene as of right has been adjudicated does not constitute a final settlement and does not render moot either the motion or an appeal from a denial of that motion." *Millard*, 823 P.2d at 461. When the parties to a case execute a settlement *after* a motion to intervene as of right under rule 24(a) has been filed, the judge must rule on the motion to intervene before approving the settlement or dismissing the case.[7]

---

[6] Current Utah Code section 63G-4-207 was numbered as 63-46b-9 when *Millard* and *Questar* were decided. Renumbering occurred in 2008.

[7] As we noted in *Millard*, "some courts . . . have held that parties who have knowledge of contemplated intervention cannot cut off a right of intervention by a settlement." *Millard*, 823 P.2d at 461 n.1. We need not reach that issue in this case because the motion to

(continued...)

¶30 To allow a settlement between the parties to litigation to moot a third party's motion to intervene as of right would be to allow the strategic behavior of the parties to "destroy the legal right on which the motion to intervene is based and . . . defeat the . . . policy allowing for intervention." *Id.* Such a rule would also invite collusion and such improper strategic behavior. As the Tenth Circuit reasoned, "[t]o allow a settlement between parties to moot an extant appeal concerning intervention of right might well provide incentives for settlement that would run contrary to the interests of justice." *Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1491 (10th Cir. 1987).

¶31 Here, the parties opposing intervention have sought to distinguish *Millard* based on the identity of the parties and the administrative nature of the proceedings in *Millard*. We are unpersuaded that these factors undermine the applicability of the rule we articulated in *Millard*—and now extend to rule 24(a)—that a settlement cannot moot an extant motion to intervene as of right. *See Millard*, 823 P.2d at 461. Supernova's motions to intervene as of right in these cases were filed before the settlement agreement was executed and before dismissal. Neither PADRM nor SummitWorks has disputed that, upon becoming aware of this litigation, Supernova promptly moved to intervene. Therefore, the motions were timely filed.

### B. Interest Relating to the Subject of the Action

¶32 Rule 24(a) requires an intervenor to "*claim*[] an interest relating to the property or transaction which is the subject of the action." (Emphasis added.) It does not require intervenors to "prove" such an interest. Furthermore, an intervenor need not claim an interest *in* the subject of the litigation but only an interest *relating to* the subject of the litigation, such that the interest "may be impacted by the judgment." *State v. Bosh*, 2011 UT 60, ¶ 9, 266 P.3d 788.

¶33 The interest "may arise from the intervenor's status or . . . circumstances." *T.H. v. R.C. (In re E.H.)*, 2006 UT 36, ¶ 51, 137 P.3d 809. The interest may be of a pecuniary nature, such as when an insurer seeks to intervene in a suit because it will be contractually obligated to reimburse its insured for the amount of the judgment. *See, e.g., Chatterton v. Walker*, 938 P.2d 255, 259 (Utah 1997). The interest may also be of a non-pecuniary nature, such as when a

---

[7] (...continued)
intervene was filed before the settlement occurred.

biological parent seeks to intervene in a child's adoption proceedings, *see, e.g., In re E.H.*, 2006 UT 36, ¶¶ 57–60, or when a trustee seeks to intervene in litigation involving trust assets or trust administration, *see*, *e.g., Frederick & Dorothy Westling Family Trust v. Westling*, 2010 UT App 291, ¶¶ 3–4, 242 P.3d 805.

¶34 Here, the Supernova parties claim an interest relating to the subject of this litigation based on their investments in the Shannon's Rainbow LLCs and their right to control those LLCs. Their claims are supported in the record by the investor agreements with Mr. DiPalma, which name Ms. Engle, on behalf of Supernova, as a manager of Shannon's Rainbow, LLC, and require that she approve any distribution arrangements. They are also supported by an authorization agreement that appears to give Ms. Engle a 51 percent ownership interest in the film. Furthermore, the Supernova parties purport to sue derivatively on behalf of the Shannon's Rainbow LLCs, after having submitted the statutorily required demand letters.

¶35 PADRM argues that because the dispute is based on unpaid legal fees owed by the SummitWorks parties, Supernova "has not established a direct, substantial, and legally protectable interest in the present matter." PADRM is wrong for three reasons. First, PADRM misstates the standard: Supernova is only required to *claim* "an interest *relating to* the property or transaction which is the subject of the action." UTAH R. CIV. P. 24(a) (emphasis added); *see Bosh*, 2011 UT 60, ¶ 9. Supernova is not required to "establish" an interest, and the interest need not be "direct" or "substantial."

¶36 Second, the unpaid legal fees are not the sole subject of the litigation. This litigation was precipitated by Mr. Pia's scheduling a non-judicial foreclosure sale of the film. In PADRM's complaint filed in the first case, the firm prayed for determinations regarding its "lien and security interests" in the film. Furthermore, the SummitWorks parties, in their complaint in the second case, sought a declaration that the consensual lien was invalid and that any foreclosure would have to be accomplished through a judicial proceeding. Thus, the film was clearly a subject of the litigation.

¶37 Finally, even if the unpaid legal fees were the sole subject of the litigation, the Supernova parties would still have an interest under rule 24(a). Supernova claims that SummitWorks lacks authority to litigate on behalf of the Shannon's Rainbow LLCs and that the majority of the assets put at risk by the litigation are Supernova investments. *See supra* ¶ 34. Because of these control

rights and investments, the Supernova parties have an interest in any litigation involving the Shannon's Rainbow LLCs.

### *C. Practical Impairment*

¶38 Rule 24(a) requires an intervenor to show that it "is so situated that the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect [its] interest."

¶39 As we explained in *Chatterton*, rule 24(a) previously permitted intervention only when an intervenor "is or may be *bound* by a judgment in the action." 938 P.2d at 258 (emphasis added) (internal quotation marks omitted). Our prior case law reflects this version of the rule. *See, e.g., Lima v. Chambers*, 657 P.2d 279, 282 (Utah 1982) (stating that rule 24(a) permits intervention only if "the applicant is or may be bound by a judgment in the action"). A 1987 amendment eliminated the "bound" requirement and provided for intervention when "the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect that interest." *Chatterton*, 938 P.2d at 258 (quoting rule 24(a) as amended). We noted in *Chatterton* that the amendment had the effect of "mandat[ing] intervention on . . . more liberal terms." *Id.*

¶40 Rule 24(a) of the Federal Rules of Civil Procedure was similarly amended in 1966. Before the amendment, the rule permitted intervention only when intervenors would be legally bound by the judgment; since the amendment, the rule has required only that an intervenor be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." FED. R. CIV. P. 24(a)(2). According to Wright and Kane,

> It has been clear to all courts that the principal purpose of the amendment was to eliminate the old reading that a would-be intervenor must be legally bound, and that instead the court is to view the effect on the intervenor's interest with a practical eye. Indeed . . . the amendment did not require, as an earlier draft would have, that the judgment must "substantially" impair or impede the applicant's ability to protect its interest. Thus, . . . even the stare decisis effect of the judgment in the existing action may, in proper circumstances, create sufficient practical disadvantage to warrant intervention as of right.

20 CHARLES ALAN WRIGHT & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE DESKBOOK § 80 (2012). This interpretation reinforces our

conclusion in *Chatterton* that the amendment served to broaden access to intervention as of right.[8]

¶41 This court has interpreted the practical impairment requirement since the rule was amended. In *Chatterton*, we held it was proper for State Farm to intervene in an action brought by its policyholder against an uninsured motorist who had rear-ended the policyholder. *Chatterton*, 938 P.2d at 259–62. State Farm sought to intervene to assert defenses on behalf of the uninsured motorist because State Farm was contractually obligated to reimburse the policyholder for damages caused by the uninsured motorist. *Id.* at 256, 259. We held that State Farm met the practical impairment requirement because "State Farm's insurance contract with [the policyholder] expressly render[ed] it liable . . . for the damages caused by [the uninsured motorist.]" *Id.* at 259.

¶42 In *Bosh,*, we upheld intervention in a preservation action. 2011 UT 60, ¶ 12. Victims of a Ponzi scheme had assigned their claims against the defendants to a corporation, which negotiated a settlement with the defendants. *Id.* ¶¶ 2–3. The state was investigating the Ponzi scheme and had frozen the defendants' assets to preserve them for restitution. *Id.* ¶ 2. The corporation moved to intervene in the state's preservation action to seek to unfreeze the assets. *Id.* ¶ 3. We found that the corporation met the practical impairment requirement because "the preservation action ha[d] a direct impact on [the corporation] and the Settlement Agreement, and [would] impair [the corporation's] ability to pursue the settlement for its assignors." *Id.* ¶ 11.

¶43 Here, the district court, having incorrectly concluded that Supernova had not claimed an interest in the litigation, did not address the remaining requirements of rule 24(a), including the requirement that the intervenor show that it "is so situated that the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect [its] interest." Given that there appears to be no dispute in the record about the nature of the litigation, the interests at stake, or the relationships between the parties and the intervenors, we need not remand for factual findings on these issues. Rather, we conclude that it is clear from the face of

---

[8] "Interpretations of the Federal Rules of Civil Procedure are persuasive where," as here, "the Utah Rules of Civil Procedure are substantially similar to the federal rules." *Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶ 7 n.2, 53 P.3d 947 (internal quotation marks omitted).

the pleadings that Supernova "is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest[s]." UTAH R. CIV. P. 24(a). First, Supernova has a pecuniary interest in the film, which was in danger of being foreclosed on. If PADRM had successfully foreclosed on the film, Supernova's ability to distribute and profit from the film would have been impaired, if not entirely cut off. The SummitWorks parties speculated in their complaint as to what would happen if PADRM foreclosed on the film:

> If the scheduled sale proceeds, Defendant will be attempting to manage and distribute or sell the project while the true owners will be suing to restore their membership interests. The confusion and chaos in the market place that will result, particularly with regard to anyone attempting to deal with the movie project, will effectively kill the project.

¶44 PADRM's argument that Supernova's interests in the film will not be impaired because "[t]he foreclosure never occurred and never will occur as long as the settlement agreement between the parties is in force" is flawed because it relies on events occurring after the motion to intervene was filed. The relevant time period for assessing whether "the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect [its] interest" is the time at which the motion to intervene is filed.

¶45 Second, any judgment or settlement agreement resulting from this litigation would have been (and was) made in the name of the Shannon's Rainbow LLCs. By not allowing Supernova to intervene, the district courts in these cases impaired and impeded Supernova's ability to protect its interests in controlling the LLCs and in protecting its investments from adverse judgments. *See supra* ¶ 34.

¶46 PADRM suggests that in lieu of intervening, Supernova should vindicate its investment and control interests through separate litigation. However, the availability of separate legal action is irrelevant to an inquiry into whether a right to intervene exists. In fact, one of the primary policies underlying intervention of right is the prevention of duplicative lawsuits. See *Lima*, 657 P.2d at 284.

¶47 We therefore determine that Supernova meets the practical impairment requirement of rule 24(a).

### D. Representation by Existing Parties

¶48 Finally, rule 24(a) requires intervenors to show that their interests are not "adequately represented by existing parties." "Adequacy of representation generally turns on whether there is an identity or divergence of interest between the potential intervenor and an original party and on whether that interest is diligently represented." *Lima*, 657 P.2d at 283. Because the SummitWorks parties and the Supernova parties both purport to act on behalf of the Shannon's Rainbow LLCs, we must consider whether the SummitWorks parties adequately represent the interests of Supernova for purposes of this litigation.

¶49 Intervenors have a burden to present "some evidence of diverging or adverse interests." *Bosh*, 2011 UT 60, ¶ 10. Such evidence can show, "for example, [that] the representative party has an interest adverse to the applicant, has colluded with the opposing party, or is otherwise unable to diligently represent the applicant's interest." *Beacham v. Fritzi Realty Corp.*, 2006 UT App 35, ¶ 9, 131 P.3d 271.

¶50 The Supernova parties allege a pattern of collusion between SummitWorks and Mr. Pia. They allege that, beginning in 2008, SummitWorks and Mr. Pia cooperated to exclude the Supernova parties from management of the Shannon's Rainbow LLCs. In this litigation, for example, SummitWorks and Mr. Pia failed to give the Supernova parties notice of the proceedings and moved to close the preliminary injunction hearing and seal the related court records. They also refused to allow the Supernova parties to see the settlement agreement in its entirety.

¶51 Supernova also alleges a divergence of interests between itself and SummitWorks:

> The SummitWorks Parties were concerned primarily about escaping personal liability, and were not challenging Mr. Pia's underlying right to take the Film or any other assets of the Shannon's Rainbow Entities. The SummitWorks Parties had no personal investment at stake. They had enriched themselves from the fund of the Shannon's Rainbow Entities, and now that those funds were exhausted, they had much less incentive than the Supernova Parties to fight to retain control of the Film.

PADRM does not dispute these allegations of collusion or divergence of interests. Thus, although the district court did not

expressly rule on this requirement, *see supra* ¶ 43, we determine that Supernova has met its burden to show that its interests are not adequately represented by the SummitWorks parties.

¶52 One of the two cases before us presents the unusual circumstance of a court purporting to protect the interests of a litigant—here, Supernova. The judge in this case stated at a March 21 hearing that he was "deferring on the intervention" until he saw the settlement agreement and determined whether any of Supernova's interests would be compromised. After reviewing the settlement agreement in camera, he determined which paragraphs the Supernova parties should see. Finally, he dismissed the case and denied the motion to intervene because he found that the Supernova parties "had not shown" that their interests were affected by the outcome of case, that is, by the settlement agreement that they were not allowed to see.

¶53 The district court's postponement of judgment on the motion to intervene was improper; the motion should have been decided in a timely manner, based on the circumstances as they existed when the motion was filed. The court's actions are also troubling because judicial oversight is never an adequate substitute for intervention where a right to intervene exists. *Lima*, 657 P.2d at 283–84; *see also State ex rel. State Farm Mut. Ins. Co. v. Craig,* 364 S.W.2d 343, 346 (Mo. Ct. App. 1963) (rejecting as "specious" the argument that the intervenor's interests would be adequately represented because "the court will require proof of plaintiff's cause" and noting that "[t]he court cannot, and should not, act as attorney for" a party). If an intervenor meets the requirements of rule 24(a), the intervenor must be permitted to protect its interests as a fully participating party. "[I]t is not the role of a judge to be an advocate. Such a concept is fundamentally contrary to the nature of our adversary system." *Lima*, 657 P.2d at 283.

¶54 Because Supernova has met all of the requirements of rule 24(a), it was error to deny its motions to intervene. Furthermore, because Supernova should have been permitted to intervene, the settlement agreement does not constitute "a stipulation of all of the parties," which is a necessary predicate for dismissal under URCP 41(a)(2)(i). The district courts therefore erred in dismissing the cases based on the settlement agreement.

## II. THE SEALING ORDER WAS IMPROPER BECAUSE THE COURT FAILED TO MAKE THE FINDINGS REQUIRED BY RULE 4-202.04(3) OF THE UTAH CODE OF JUDICIAL ADMINISTRATION AND FAILED TO CONSIDER THE PUBLIC'S INTEREST IN OPEN COURT RECORDS

¶55 Supernova appeals the district court's order sealing the court documents related to the preliminary injunction hearing in the first case. Supernova argues that the sealing order was improper because the court failed to make necessary findings and failed to consider the public's interest in open court records. We agree.

¶56 Rule 4-202.04(3) of the Utah Code of Judicial Administration (UCJA) requires judges to follow prescribed steps before granting a motion to seal a court record. A judge must (1) "make findings and conclusions about specific records;" (2) "identify and balance the interests favoring opening and closing the record;" and (3) "if the record is ordered closed, determine there are no reasonable alternatives to closure sufficient to protect the interests favoring closure." UTAH CODE JUD. ADMIN. R. 4-202.04(3). The rule applies to both civil and criminal proceedings.

¶57 The "interests" that must be identified and balanced under rule 4-202.04(3) include the public's interest in open court records. *See State v. Allgier*, 2011 UT 47, ¶¶ 10–11, 258 P.3d 589 (holding that under the plain language of the UCJA there is a "presumptive right of public access" to court records). The public's presumptive right to access court records serves many purposes, including "to educate the public about the workings of government," "to contribute to informed debate," "to hold public officers and employees accountable," "to increase public confidence," and "to give notice of important claims, rights and obligations." UTAH CODE JUD. ADMIN. R. 4-202(1) (providing an illustrative list of the purposes served by open court records).

¶58 Because of the public's interest in open court records, a court must make the findings required by rule 4-202.04(3) even when all parties stipulate to sealing. A court has discretion to seal documents only "if the public's right of access is outweighed by competing interests." *State v. Archuleta*, 857 P.2d 234, 240–41 (Utah 1993) (internal quotation marks omitted) "Competing interests include protecting the integrity of ongoing investigations and proceedings, the privacy of those involved, . . . the defendant's right to a fair trial," *id.* at 241 (footnotes omitted), public safety, and "promot[ing] the rehabilitation of offenders, especially youthful offenders," UTAH

CODE JUD. ADMIN. R. 4-202(2) (providing an illustrative list of the purposes served by closed court records).

¶59 Here, SummitWorks and PADRM filed a stipulated motion to close the preliminary injunction hearing and seal all related records. They claimed many of the documents were protected by attorney-client privilege and argued that disclosure of information, trial strategy, and analysis would disadvantage the SummitWorks parties in other lawsuits against the Supernova parties. The district court granted the motion to seal based on its "review[ of] the Stipulated Motion and the supporting memorandum" and its finding "[g]ood cause" to seal. It made no further factual findings.

¶60 The failure of a district court to make necessary findings is an abuse of discretion "unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225, 231 (Utah 1995) (internal quotation marks omitted). Because here the facts in the record do not show that the public interest was considered or that alternatives to closing the record were considered, the district court abused its discretion when it granted the sealing order, and the order must be set aside.

## CONCLUSION

¶61 Supernova has a right to intervene in this litigation, and the public has a right to access the court records related to the preliminary injunction hearing unless and until they are properly sealed under UCJA rule 4-202.04(3). We therefore reverse the denial of Supernova's motions to intervene and set aside the sealing order.

¶62 Our holding requires us to determine what actions are necessary on remand to return the parties to their status quo prior to the erroneous denial of the motions to intervene. We conclude that the dismissals must be vacated inasmuch as they were predicated on the erroneous view that the settlement agreement constituted "a stipulation of all of the parties" under URCP 41(a)(2)(i). We also conclude that the settlement agreement must be set aside so that Supernova may participate in the resolution of the issues presented in the litigation. Finally, to promote judicial economy and prevent inconsistent outcomes, we direct that the cases be consolidated into one district court action.

―――――――