## IN RE BOGERT'S ESTATE
## APPEAL OF BREITING

No. 4762. Decided August 22, 1930. (290 P. 947.)

*A. A. Platz,* of Salt Lake City, for appellant.

*Morris & Callister,* of Salt Lake City, for respondent.

EPHRAIM HANSON, J.

This proceeding was instituted for the revocation of letters testamentary issued to Bena Breiting by the court in pursuance of the terms of the will of Carrie Bogert.

The statute, Comp. Laws Utah 1917, § 7627, so far as material here, is as follows:

"The court * * * may, upon citation, revoke the letters * * * of any executor or administrator for neglect, mismanagement, waste, embezzlement, incompetency, incapacity, * * * or for any other reason deemed sufficient by the court."

Alvina Larimer, a sister of and legatee under the will of decedent, averred in her petition as cause for revocation that the executrix (who is the appellant here) had been appointed June 3, 1927, and that she had not filed an inventory until December 20, 1927; that the estate had been in a condition to be closed since December 23, 1927; that demands had been made that she render an account and close the estate, but that she had refused to do so; that she and her counsel had been in disagreement concerning the affairs of the estate, and as a result of such disagreement, which was resulting in waste to the estate, counsel had been cited before the court on December 12, 1927, to show cause why he should not be punished for contempt for the manner in which the affairs of the estate were being handled; that the said citation issued upon the court's own motion; that counsel appeared before the court about January 27, 1928, and promised that an accounting would be made and the estate distributed and closed, and that thereupon the citation was dismissed; and that since the dismissal of the citation, petitioner and others interested in the estate had demanded that said estate be distributed and closed, but the executrix and her counsel had refused to do so, with the result that the assets of the estate were being wasted to the detriment of petitioner and other legatees.

The petition was filed April 14, 1928, and thereupon a citation was issued requiring the executrix to show cause on April 18, 1928, at 2 o'clock p. m. why she should not be removed as executrix. The citation was served upon the executrix the same day.

On April 20, 1928, five days after service of the citation, the executrix served and filed a motion to quash the citation and order to show cause and a general and a special demurrer. The matter came on for hearing April 21, 1928, at 10 o'clock a. m. The record does not show why the hearing was not had on April 18th.

The parties appeared in person and by counsel, and announced themselves ready to proceed. Thereupon the demurrer was overruled, and the motion to quash was denied, and exceptions to said rulings were taken. The court then announced that the burden was on petitioner to produce the evidence. Counsel for the executrix objected to any testimony being offered for the reason there was nothing before the court, and the court was without jurisdiction in the premises. No reason being assigned for this objection, it was overruled and an exception taken. Counsel for the executrix then said, "I might state that the order is directed to us to show cause and I think the proper procedure should be that we should show cause," whereupon the court said that if counsel wished to proceed he might do so, and counsel for petitioner consented thereto. No permission to file an answer was requested and no answer was tendered. Thereupon the executrix was sworn, and testified. From her testimony it appears that she employed an attorney to represent her as executrix, and that she had turned over to him the property of the estate, among other things, $1,500 in Liberty bonds, and notes and mortgages; that the attorney had collected certain of the notes and had retained $609, later returning to her $68.25, keeping $540.75 as his fee; that she had constantly urged him to close the estate, but he had neglected to do so. She testified that she had gone to the trial judge before whom the proceedings were pending, and told the judge that the attorney had retained a note and mortgage and had collected money belonging to the estate, and that he had retained the money; that the attorney, having been brought before the court, promised that he would account for everything in the final account

of the executrix, and that he would proceed at once to have the estate closed; that notwithstanding such promises, the attorney neglected to do anything, and after the present proceedings were commenced she had been obliged to employ another attorney. It further appeared from her testimony that the attorney had sold certain Liberty bonds without first obtaining an order of court to do so. The bonds, with interest coupons attached, amounted to $1,652.82 face value, and they were sold for $1,478.69, and she was unable to account for the low price for which they were sold. She failed to file an account until after these proceedings were instituted. She then employed Mr. Platz as her attorney and paid him $600, and then $100. It further appears from her testimony that as soon as she received letters testamentary she withdrew from various banks moneys which had been deposited by the decedent, aggregating $3,201.58. Of this sum $1,345.66 was on deposit with the Continental National Bank, and this money was inventoried by her as belonging to the estate. Later she was advised by her attorney that this money belonged to her and not to the estate, and she laid claim to it. Upon the employment of Mr. Platz as her attorney, he also advised her that the money belonged to her, and thereupon, as will presently be seen, she employed him as her attorney to litigate this question and paid him out of this money the sum of $600 as an attorney fee. She employed him also to represent her as executrix and paid him the sum of $100 out of other funds of the estate.

Upon being interrogated as to what she had done with the $1,345 so withdrawn from the Continental National Bank, she answered: "I have a receipt from the attorney." Being further pressed, she testified that she had given Mr. Platz $600 from the fund, and an additional sum of $100 from the estate funds. Why she paid $600 and $100 to Mr. Platz is definitely shown by the following leading questions asked by himself of the executrix while she was on the witness stand:

"Q. Now, Mrs. Breiting, you said to counsel in answer to a question here whether you had employed me in any other capacity except as attorney for the estate, and I will ask you to state whether or not you employed me with reference to this item of $1345.66 to represent you and your daughter? A. Yes, sir.

"Q. And I am your attorney with respect to that money in addition to representing you as executrix? A. Yes, I overlooked that.

"Q. And the $600.00 which you have testified you paid me is on account of attorney's fees with reference to that item of $1345.00? A. Yes, sir."

It was also made to appear that the sum of $745.66, being the balance of the $1,345.66 inventoried as belonging to the estate was deposited to the personal credit of Bena Breiting and Elita Frost, her daughter, in the Deseret National Bank. This was done on or about April 14, 1928, and was subsequent to the filing of the petition for the revocation of the letters testamentary theretofore issued to her, and after the service of the citation upon her.

The parties then submitted the matter to the court for its decision, who thereupon made findings of fact and conclusions of law. The substance of such findings as we deem material to the questions before us is as follows: Notice to creditors had been given and the time for filing claims against the estate expired August 11, 1927. The inventory and appraisement of the property of the estate of Carrie Bogert, deceased, fixed the total value at $7,439.96. Of this amount there was an item of cash on hand in the sum of $1,345.66 in her name as executrix of the estate in the Continental National Bank, and on or about the 18th day of April, 1928, and subsequent to the filing of the petition for the revocation of her letters, and the service of the citation upon her, she had withdrawn that money from the bank, and without authority of court paid over to Arthur A. Platz, her personal attorney, from such money, the sum of $600; that she deposited the balance of the $1,345.66, to wit, the sum of $745.66, in the Deseret National Bank in her own name and the name of Elita Frost, her daughter. That after

her appointment she turned over to her then attorney certain Liberty bonds of the value of $1,500 and promissory notes and mortgages belonging to said estate of the value in excess of $1,500; that some of the notes were paid to her attorney, and that owing to her incompetency, negligence, and carelessness the attorney kept $500 thereof which he has failed to return and now claims as an attorney's fee, although the sum has never been allowed by the court. That her attorney without an order of court sold the Liberty bonds at private sale; that the executrix has no knowledge as to what the market value of said Liberty bonds was. That since the first attorney withdrew she has paid out the sum of $100 on account of attorney's fees alleged to have been rendered by her present attorney. That by a provision of the will she is serving without bond. That she is incompetent to act as executrix of the estate, and has neglected, *mismanaged,* and wasted the assets of the estate, and that the Central Trust Company, a corporation, is a fit and proper corporation to act as administrator with the will annexed of said estate.

As a conclusion of law the court found that an order should be made and entered revoking the letters testamentary granted to Bena Breiting and that the Central Trust Company should be appointed administrator of the estate with the will annexed.

Such an order was accordingly made and entered. From such the appellant prosecutes this appeal. She has assigned numerous errors upon which she relies for a reversal of the order.

The principal question presented by the assignments of error relates to the insufficiency of the evidence to sustain the findings. With the exception of one or two immaterial matters, we think the evidence sustains the findings. We entertain no doubt whatever that the trial court was amply justified in removing Mrs. Breiting and revoking the letters testamentary theretofore granted to her because of her mismanagement of the estate.

As has been seen, our statute gives the court power to revoke the letters of any executor or administrator for neglect, mismanagement, waste, incompetency, incapacity, or for any other reason deemed sufficient by the court. The court appointing an administrator or executor ■ has a very large discretion in determining whether, upon the facts presented, the officer shall either be removed or suspended, and unless it appears that such discretion has been abused, the action of the trial court will not be disturbed on appeal. *Farnsworth* v. *Hatch,* 47 Utah 62, 151 P. 537; *In re Newell's Estate,* 18 Cal. App. 258, 122 P. 1099.

Assuming without deciding, that she was not to blame for the failure of her attorney to have an inventory filed within the time provided by law and of his retention without right of moneys belonging to the estate and of the sale without an order of court of Liberty bonds at a price apparently less than their value, and of her disagreements with him, and of the fact that the estate was not closed after it was in a condition to be closed, it is, however, shown by her own testimony that after getting rid of that attorney she then put the affairs of the estate into the hands of an attorney, who advised her that funds which apparently belonged to the estate and which she had received in her capacity as executrix belonged to her, and paid him an attorney's fee amounting to nearly half of the fund to represent her personally, at the same time paying him a substantial fee for acting for her as executrix.

The attorney well knew, and she, if she is competent to administer the affairs of the estate, should know, that he could not act as her attorney in seeking to enforce her claim against the estate and at the same time act as her attorney in attempting to defeat the claim. She had ■ no right to take a part of this fund to pay her lawyer a fee for seeking to enforce her alleged claim to the money, and this alone, we think, justified the court in removing her. The situation thus presents such a case of mismanagement

and the dissipation of the estate as to come clearly within the foregoing provision of the statute.

In addition to this, it appears that she is now claiming to own $1,345.66 which she received as executrix, and which apparently belongs to the estate. Thus she has a conflicting personal interest which would prevent her from doing her duty and this is sufficient ground to justify her removal. *Farnsworth* v. *Hatch,* supra.

Appellant assigns as error the court's denial of the motion to quash the citation. In support of this assignment counsel calls our attention to the fact that the petition filed herein was not signed by the petitioner, nor was it verified. Obviously, a carbon copy was filed through inadvertence instead of the original. The parties and the court assumed, however, that there was in the files a properly signed and verified petition. Had counsel called the court's attention to the matter, petitioner would have been obliged to correct the error, which could have been done at once. Inasmuch as the question was not raised in the lower court, it cannot be considered here.

Again the appellant complains that the citation required the executrix to appear within three days instead of five days as the statute requires. But the fact of the matter is she did not appear or file any pleading until five days after service of the citation, and the hearing was had six days after the service of the citation and after all parties appeared and announced themselves ready to proceed. Under these circumstances we do not see that the shortening of the time in which the executrix was to appear prejudiced her.

Appellant makes an assignment that the court erred in overruling the general and the special demurrers. The special demurrer was that the petition was ambiguous, unintelligible, and uncertain. The general demurrer was properly overruled. We think the petition was uncertain in some respects, and had a demurrer been

made upon this ground alone it should have been sustained. The petition is neither ambiguous nor unintelligible. It was proper therefore for the court to overrule the special demurrer. *Kraner* v. *Halsey*, 82 Cal. 209, 22 P. 1137; *White* v. *Allatt*, 87 Cal. 245, 25 P. 420; *Greenebaum* v. *Taylor*, 102 Cal. 624, 36 P. 957.

But aside from this, it appears the trial court stated that the burden of proof was on the petitioner, and counsel for respondent insisted upon assuming the burden. Had he permitted the petitioner to proceed, and matters were testified to which the executrix was unprepared to meet, she would then have been in a position to have a continuance. But as she voluntarily assumed the burden of proof and her own testimony clearly showed there was sufficient cause to warrant her removal, she cannot complain of the overruling of the special demurrer.

A number of other errors are assigned. We have considered them carefully. There is no merit in any of them.

The order of the trial court is affirmed. Costs to respondent.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.