*This opinion is subject to revision before
publication in the Pacific Reporter*

**2014 UT 56**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JANETTA J. GARDINER,
*Petitioner and Appellant,*

*v.*

NEDRA V. TAUFER; JANICE V. DOBBINS; CONNIE V. MORGAN;
and JOHN M. VANDERWERFF,
*Respondents and Appellees.*

No. 20120554
Filed December 9, 2014

Second District, Ogden Dep't
The Honorable Mark R. DeCaria
No. 104900910

Attorneys:

Robert J. Fuller, Eden, for appellant

Samuel A. Hood, Ogden, for appellees

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of
the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This case involves a challenge by relatives of Mr. Kenneth Vanderwerff to an action for a posthumous declaration of unsolemnized marriage brought by Mr. Vanderwerff's romantic partner and personal representative of his estate—Ms. Janetta Gardiner. We are asked to determine when and how service of process is to be made in the unusual circumstance where a petitioner seeks a declaration of marriage between herself and someone who has died. This case was certified to us by the court of appeals and comes to us with a complicated procedural history. Ms. Gardiner appeals from the court's sua sponte order dismissing the case approximately two years after the petition was granted for untimely service under

rule 4(b)(i) of the Utah Rules of Civil Procedure. On appeal, Ms. Gardiner challenges the grant of intervention to Mr. Vanderwerff's four cousins, the setting aside of the declaration of marriage under rule 60(b) of the Utah Rules of Civil Procedure, and the court's subsequent dismissal of the marriage case. We reverse on all three issues and reinstate the declaration of marriage.

## BACKGROUND

¶ 2   Appellant Ms. Gardiner and the late Mr. Vanderwerff were in a romantic relationship from approximately November 2007 until Mr. Vanderwerff's death at age 78 on April 22, 2010. Ms. Gardiner and Mr. Vanderwerff's relationship was not solemnized as a marriage in any state during Mr. Vanderwerff's lifetime. Mr. Vanderwerff had no children. About a month after Mr. Vanderwerff's death, on May 18, 2010, Ms. Gardiner filed a petition for a "judicial declaration of common law marriage" under Utah Code section 30-1-4.5 (marriage case). The following day, William Francis, Mr. Vanderwerff's step-grandson (a descendant of Mr. Vanderwerff's first wife), filed a probate action concerning Mr. Vanderwerff's estate (probate case). That same day, Mr. Francis was appointed special administrator of the estate. After Ms. Gardiner was served with notice of the probate action on May 20, 2010, she sought to have Mr. Francis removed from his position as special administrator and to have herself appointed as the estate's personal representative.

¶ 3   On June 8, 2010, Mr. Francis sought to intervene in the marriage case, both in his individual capacity and as special administrator of Mr. Vanderwerff's estate. He objected to Ms. Gardiner's petition for a judicial declaration of unsolemnized marriage and styled his motion in the form of an answer. Ms. Gardiner timely opposed Mr. Francis's motion. However, Mr. Francis did not file a reply or request to submit the motion for decision. As a result, the court did not rule on Mr. Francis's motion.

¶ 4   Subsequently, in the probate case, on August 2, 2010, the court held a hearing on Ms. Gardiner's motion to remove Mr. Francis as the special administrator. Ms. Gardiner produced a copy of Mr. Vanderwerff's will. Based on the terms of the will, Mr. Francis and Ms. Gardiner stipulated to Mr. Francis's removal

and Ms. Gardiner's appointment as personal representative of the estate.

¶ 5    That September, the court held a hearing in the marriage case.   The hearing was held without formal notice to Mr. Francis or any members of Mr. Vanderwerff's family.   The only individuals present were Ms. Gardiner, her counsel, and Ms. Gardiner's two witnesses.   The court granted the marriage declaration the same day.

¶ 6    Two months later, on November 9, 2010, Mr. Francis moved to set aside the declaration of marriage under Utah Rule of Civil Procedure 60(b) on the basis of surprise, fraud, and "any other reason justifying relief from the operation of the judgment." Mr. Francis's primary argument under rule 60(b) was that he had not been served with notice of the original petition or of the hearing.

¶ 7    Instead, on March 10, 2011, the court concluded that Mr. Francis had no standing to move to set aside the marriage determination.   In so deciding, the court noted that Mr. Francis is a "step grandson not having been adopted by decedent [Mr. Vanderwerff] nor is he a child or adopted child of a natural child [of] the decedent."   "As such," the court continued, Mr. Francis "lacks standing to contest the determination by the court as to whether the relationship between Kenneth J. Vanderwer[ff] and Janetta J. Gardiner constituted a marriage at common law."

¶ 8    Then in August 2011, four of Mr. Vanderwerff's cousins, Nedra Taufer, Janice Dobbins, Connie Morgan, and John Vanderwerff (Cousins), moved to set aside the judgment under rule 60(b) on grounds of surprise, fraud, and for "any other reason justifying relief."   In an affidavit accompanying the motion, one of the Cousins, Ms. Taufer, declared that she "was aware of [Mr. Francis's] petition to be appointed special administrator, as well as his agreement that Janetta Gardiner would be appointed as personal representative of the estate."   She went on to say that she "was also aware of Ms. Gardiner's petition to be made a common law spouse." Ms. Gardiner filed a motion to strike and argued that the Cousins, as nonparties, could not make a motion

in the case.[1]  She argued that because the Cousins were not parties to the marriage action, they therefore could not file any substantive motions other than a motion to intervene.  In response, on October 11, 2011, the Cousins filed a motion to intervene—over a year after the marriage petition was granted. Both the motion to strike and the motion to intervene were fully briefed and submitted to the court for decision, but the Cousins' rule 60(b) motion to set aside the judgment was not.

¶ 9    On February 27, 2012, the court heard oral argument on the motions.   At the hearing, the court orally granted a "limited" motion to intervene and provisionally set aside the declaration of marriage to take further evidence on the issue of whether Ms. Gardiner and Mr. Vanderwerff's relationship satisfied the statutory elements for a determination of marriage.   The Cousins submitted a proposed order setting aside the determination of marriage and granting the motion to intervene.   Ms. Gardiner objected to the proposed order, in part because she was never given an opportunity to brief the merits of her opposition to the Cousins' rule 60(b) motion to set aside the declaration of marriage.

¶ 10  At a hearing on March 12, 2012, the court acknowledged Ms. Gardiner's objection to the motion to set aside the declaration of marriage and set a hearing date.  Nevertheless, three days later the court signed the Cousins' proposed order, setting aside the declaration of marriage and granting intervention to the Cousins.

¶ 11  Then, about a month later, on April 18, 2012, the court, on its own initiative, ordered the marriage case dismissed in its entirety and without prejudice under rule 4(b)(i) of the Utah Rules of Civil Procedure on the basis of Ms. Gardiner's alleged failure to serve process within 120 days of the filing of the marriage petition.

¶ 12  On May 21, 2012, Ms. Gardiner filed a motion to extend her time to appeal under rule 4(e) of the Utah Rules of Appellate

---

[1] In addition to moving to strike the nonparty motion, Ms. Gardiner also asked the court to extend her time to respond to the motion to set aside the judgment until after the motion to intervene was ruled upon.

Procedure. The court granted the motion and Ms. Gardiner timely appealed. We have jurisdiction under Utah Code section 78A-3-102(3)(b).

## ISSUES AND STANDARD OF REVIEW

¶ 13    The Cousins challenge our jurisdiction on appeal. They argue that we lack jurisdiction because the district court abused its discretion when it granted Ms. Gardiner a time extension under Utah Rule of Appellate Procedure 4(e). "Whether this court has jurisdiction over an appeal is a question of law that can be raised for the first time on appeal."[2]    Because we conclude that we have jurisdiction, we address the three issues that Ms. Gardiner brings before us on appeal. First, she challenges the court's sua sponte dismissal of her marriage action for failure of service under rule 4 of the Utah Rules of Civil Procedure. "[T]he interpretation of a rule of procedure is a question of law that we review for correctness."[3]    Second, Ms. Gardiner argues that the district court improperly set aside the judgment of marriage. The district court has broad discretion to decide whether to set aside a judgment, and thus we "will not reverse . . . absent an abuse of discretion."[4]    Third and finally, Ms. Gardiner challenges the district court's decision to allow the intervention of the Cousins. "As a general matter, the factual findings underpinning an intervention ruling are subject to a clearly erroneous standard" while the district court's legal conclusions are reviewed for "correctness."[5]

---

[2] *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 7, 293 P.3d 241 (internal quotation marks omitted).

[3] *State v. Rodrigues*, 2009 UT 62, ¶ 11, 218 P.3d 610 (alteration in original) (internal quotation marks omitted).

[4] *Cedar Surgery Ctr., L.L.C. v. Bonelli*, 2004 UT 58, ¶ 7, 96 P.3d 911.

[5] *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 14, 297 P.3d 599.

## ANALYSIS

¶ 14 As a threshold matter, we address the Cousins' contention that we lack jurisdiction on appeal. The Cousins argue that the district court abused its discretion when it granted Ms. Gardiner a time extension to file her notice of appeal. They contend that "confusion, advanced age, and a desire for more time . . . do not constitute good cause," and thus the district court abused its discretion when it granted Ms. Gardiner extra time to file her appeal under rule 4(e). A party may move to dismiss an appeal at any time "on the basis that the appellate court lacks jurisdiction."[6]

¶ 15 The district court's discretion to grant a party additional time to file an appeal is "very broad and fundamentally equitable in nature."[7] Here, the district court did not abuse its discretion when it determined that Ms. Gardiner's advanced age and the complex issues involved[8] constituted "good cause" to allow her additional time to decide whether to appeal.[9] Accordingly, Ms. Gardiner's appeal was timely filed and we have jurisdiction. We now turn to the merits of Ms. Gardiner's claims on appeal. We hold that the district court improperly set aside the declaration of marriage, granted intervention, and dismissed the case of its own accord for failure of service.

---

[6] UTAH R. APP. P. 10(a)(1); *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 7, 293 P.3d 241 ("[A] lack of jurisdiction can be raised at any time by either party or by the court." (internal quotation marks omitted)).

[7] *Pruett v. Anderson*, 2013 UT App 33, ¶ 1, 296 P.3d 797 ; *see also Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶¶ 6, 15, 2 sP.3d 447.

[8] The court stated that "this case has been confusing, I think, for Ms. Gardiner and all of the parties with regard to the—how the probate and the common law marriage issues intertwine."

[9] *See Parke-Chapley Constr. Co. v. Cherrington*, 865 F.2d 907, 909 & n.5 (7th Cir. 1989) (interpreting the federal counterpart to Utah Rule of Appellate Procedure 4(e) and stating that "good cause" is "undefined, being left to judicial interpretation" and that the "good cause" standard allows district judges "to accommodate a wide[] array of circumstances").

## I. THE DISTRICT COURT IMPROPERLY GRANTED INTERVENTION WITHOUT CONSIDERING THE RULE 24(a) FACTORS

¶ 16   Ms. Gardiner argues that the district court erred when it granted the Cousins' motion to intervene because they failed to satisfy the elements of rule 24(a) of the Utah Rules of Civil Procedure, which governs intervention of right.   At the time the parties submitted briefing, *State v. Bosh* established our standard of review concerning the propriety of a grant of intervention of right.[10]   Just one week after briefing was completed in this case, we issued *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, which clarified our standard of review for motions to intervene under rule 24(a).[11]   In *Bosh,* we stated that a motion to intervene of right was reviewed for correctness, [12] but in *Supernova Media* we clarified that "ruling on a motion to intervene encompasses several types of analysis, each subject to a different standard of review."[13]   "As a general matter, the factual findings underpinning an intervention ruling are subject to a clearly erroneous standard, and the district court's interpretation of rule 24(a) is reviewed for correctness."[14]

¶ 17   A party attempting to intervene under rule 24(a) of the Utah Rules of Civil Procedure must establish four elements:

> (1) that its motion to intervene was timely, (2) that it has an interest relating to the property or transaction which is the subject of the action, (3) that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest, and (4) that its interest is not adequately represented by existing parties.[15]

---

[10]  2011 UT 60, ¶ 5, 266 P.3d 788.

[11]  2013 UT 7, ¶¶ 14–18, 297 P.3d 599.

[12]  *Bosh*, 2011 UT 60, ¶ 5.

[13]  *Supernova Media*, 2013 UT 7, ¶ 14.

[14]  *Id.* (citation omitted).

[15]  *Id.* ¶ 22 (alteration in original) (internal quotation marks omitted).

¶ 18   In this case, the district court's order granting the motion to intervene did not state the basis for the court's decision, nor did the court make findings on the rule 24(a) elements at the February 27, 2012, hearing.[16]  Instead of analyzing the propriety of intervention under the *Supernova Media* factors, the court appears to have erroneously based its decision on its conclusion that Ms. Gardiner was required to serve the Cousins and that the Cousins should have had an opportunity to present evidence at the marriage adjudication.   Significantly, the court failed to address the timeliness of the Cousins' motion to intervene, which was  filed  over  a  year  after  the  declaration  of marriage was entered.   As  a  general  rule,  "intervention  is not    to be permitted after entry of judgment."[17]   We regard "[p]ostjudgment intervention . . . with disfavor" due to its "tendency . . . to prejudice the rights of existing parties" and unduly  interfere  with the  "orderly  processes  of  the  court."[18] Thus, we are "reluctant to make exceptions to the general rule."[19] Postjudgment intervention should be allowed "only upon a strong showing of entitlement and justification, or such unusual or compelling  circumstances  as  will  justify  the  failure  to  seek intervention earlier."[20]

¶ 19   In this case, the Cousins sought intervention over a year after  the  marriage  declaration  was  entered,  even  though  it appears  that  at  least  one  of  them  was  aware  of  the  marriage

---

[16] The order simply states that "[t]he motion to intervene in this  action  brought  by  [the  Vanderwerff  Cousins],  who  are cousins  and  potential  heirs  of  Kenneth  Vanderwerff,  is  hereby granted."

[17] *Jenner v. Real Estate Servs.*, 659 P.2d 1072, 1074 (Utah 1983); *see also Supernova Media*, 2013 UT 7, ¶ 24 ("Generally, a motion to intervene is timely if it is filed before the final settlement of all issues by all parties, and before entry of judgment or dismissal[.]" (citation omitted) (internal quotation marks omitted)).

[18] *Jenner*, 659 P.2d at 1074; *accord Supernova Media*, 2013 UT 7, ¶ 23.

[19] *Jenner*, 659 P.2d at 1074.

[20] *Id.* (footnotes omitted).

proceeding at the time it occurred.[21]    If this is true, it appears that if the Cousins choose to seek intervention again on remand, they will have a difficult time showing that their motion to intervene was timely.[22]

¶ 20   We stop short of weighing in on the question of whether, assuming their motion was timely, the Cousins could have shown, as a matter of law, that they had an "interest relating to the property or transaction which is the subject of the action."[23]    This court discussed that question in *In re Marriage of Gonzalez* but failed to achieve a majority resolution.[24]    Because the timeliness of the Cousins' motion is a threshold question that is "determined under the facts and circumstances of [the] particular case, and in

---

[21]   The declaration of Nedra Taufer states that "I was aware . . . that Janetta Gardiner would be appointed as personal representative of the estate.   I was also aware of Ms. Gardiner's petition to be made a common law spouse as well as her attorney's acknowledgement in court in August 2010 that the two cases could be consolidated."

[22]   *See Supernova Media*, 2013 UT 7, ¶ 24 ("A party may waive its right to intervene by substantially and unjustifiably delaying its motion to intervene."); *Bosh*, 2011 UT 60, ¶ 8 ("As a general rule intervention is not to be permitted after entry of *judgment* . . . ." (internal quotation marks omitted)); *Republic Ins. Grp. v. Doman*, 774 P.2d 1130, 1131 (Utah 1989) (affirming denial of intervention when a party had "notice and opportunity to intervene at an earlier stage of the proceeding," yet waited until a motion for summary judgment had been submitted before requesting intervention).

[23]   *Supernova Media*, 2013 UT 7, ¶ 22 (internal quotation marks omitted); Utah R. Civ. P. 24(a)(2).

[24]   2000 UT 28, ¶¶ 49, 50, 1 P.3d 1074 (Zimmerman, J., concurring) (2-1-2 decision) (in an action for adjudication of an unsolemnized marriage, a majority of the court upheld the parties' stipulation to intervention of a third party but the court was split on the question of whether intervention by third parties in marriage adjudications is generally proper as a matter of law).

the sound discretion of the court,"[25] we remand but stop short of deciding whether intervention would be proper considering the other three *Supernova Media* factors for rule 24(a) intervention.[26] Because the district court failed to make findings on the necessary elements for granting intervention, especially timeliness, we reverse the grant of intervention without prejudice[27] and instruct the district court to conduct a full analysis of the *Supernova Media* factors if the Cousins attempt to intervene again.

## II. THE DISTRICT COURT IMPROPERLY SET ASIDE THE MARRIAGE DECLARATION AND DISMISSED THE CASE

¶ 21   Ms. Gardiner argues that the court improperly set aside the marriage declaration and then dismissed the marriage case sua sponte under Utah Rule of Civil Procedure 4(b)(i) for failure of service.

### A.   *The District Court Improperly Set Aside the Declaration of Marriage*

¶ 22   There was some confusion at the hearing on February 27, 2012.   On that day, the only motions fully briefed and submitted to the court for decision were Ms. Gardiner's motion to strike the Cousins' rule 60(b) motion to set aside the declaration of marriage as a nonparty motion and the Cousins' subsequent motion to intervene.   Ms. Gardiner had not briefed the Cousins' rule 60(b) motion on its merits—she had moved to strike it only because it was filed before the Cousins' motion to intervene, and before any grant of intervention to the Cousins.   Nevertheless, at the hearing

---

[25] *Supernova Media*, 2013 UT 7, ¶ 23 (internal quotation marks omitted).

[26] *Id.* ¶ 22.

[27] *Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶ 29, 179 P.3d 808 ("Generally, when a trial court fails to make factual findings on a material issue, such failure constitutes reversible error, and we remand to the trial court to enter the necessary findings unless we determine that such error is harmless, i.e., the undisputed evidence clearly establishes the missing findings or the missing findings may reasonably be implied.").

on February 27, 2012, the court addressed the merits of the Cousins' motion to set aside the marriage declaration, in violation of Utah Rule of Civil Procedure 7(d), which states that "[i]f no party files a request [to submit], the motion will not be submitted for decision." Following the hearing, and over Ms. Gardiner's objection, the court signed an order setting aside the marriage declaration under rule 60(b)(6) of the Utah Rules of Civil Procedure on the basis that Ms. Gardiner had failed "to serve the estate of [Mr.] Vanderwerff with process, or to serve any other individual or entity with process in this matter."

¶ 23 District courts are typically granted broad discretion to issue rulings on rule 60(b) motions "because most are equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness that do not easily lend themselves to appellate review."[28] Nevertheless, we review the district court's legal conclusions in the context of a rule 60(b) ruling for correctness.[29] In this case, the court's order setting aside the marriage petition under rule 60(b)(6) was based entirely on its erroneous legal conclusion that Ms. Gardiner had failed to serve Mr. Vanderwerff's estate.[30] The district court also ruled on the rule 60(b) motion in violation of Utah Rule of Civil Procedure 7(d) because the motion had not been submitted for decision and Ms. Gardiner had not had the opportunity to brief her opposition to it. This procedural error was not harmless, because if Ms. Gardiner had been able to fully brief her opposition to the Cousins' rule 60(b) motion, it is reasonably likely that the district court might not have erroneously granted the motion.[31] Thus,

---

[28] *Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198.

[29] *See id.* ("Because the trial court's ruling turned on its conclusion that rule 60(b)(1) did not apply to [the judge's] treatment of [the party's] motions to renew the judgment, a decision dependent upon the legal question of how rule 60(b)(1) should be interpreted, we therefore review the decision for correctness.").

[30] *See infra* Part II.B.2.

[31] *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991) (holding that where a party was not given the opportunity to file opposition to a motion for summary judgment, a "technical

(con't.)

the court erred when it granted the Cousins' rule 60(b) motion both as a matter of procedure and as a matter of law.

¶ 24 As explained in Part II.B.2, *infra*, service was not improper because Ms. Gardiner was the personal representative of the estate and timely waived service on the estate. Because service was properly waived, the district court had no reason to set aside the marriage determination for lack of proper service. Accordingly, the district court erred when it set aside the marriage determination.[32] We therefore reinstate the district court's September 13, 2010, order establishing an unsolemnized marriage between Ms. Gardiner and Mr. Vanderwerff.

### B. The District Court Improperly Dismissed the Marriage Action

¶ 25 Ms. Gardiner first argues that the court erred when it dismissed the marriage action without giving her the opportunity to raise defenses. Second, she argues that service was not improper and the district court should not have dismissed the action under rule 4(b)(i) for three reasons: (1) Mr. Francis, in his capacity as special administrator, waived service when he filed a motion to intervene in the marriage case; (2) Mr. Francis stipulated to Ms. Gardiner's appointment as personal representative and thereby waived any objection to a potential conflict of interest; and (3) in any event, service was proper because the personal representative of the estate (Ms. Gardiner herself) waived service within 120 days of the filing of the marriage petition. We first address the propriety of the district court's dismissal of the action on its own initiative under rule 4(b)(i) and find that it was improper. We then turn to the issue of service and hold that service was proper because the personal representative of the estate waived service within 120 days of the filing of the marriage petition.

---

violation" of the Utah Rules of Civil Procedure will "void the grant" of the motion unless "the violation amounts to harmless error").

[32] As explained in Part II.B, *infra*, the court also erred when it subsequently dismissed the marriage action entirely.

*1. The District Court Erred in Sua Sponte Dismissing the Action Without First Giving Notice to Ms. Gardiner*

¶ 26 On April 18, 2012, the district court dismissed the probate case "upon its own initiative" under Utah Rule of Civil Procedure 4(b)(i). It dismissed the case because it found that Ms. Gardiner had "not served process on anyone since filing her petition for determination of common law marriage" and therefore the action had to be "dismissed, without prejudice."[33] The court's actions cannot be squared with the rules of civil procedure taken as a whole. "When we interpret a procedural rule, we do so according to our general rules of statutory construction."[34] Thus we "read the plain language of the [rule] as a whole, and interpret its provisions in harmony with other [rules]."[35]

¶ 27 There is some tension between Utah Rules of Civil Procedure 4(b)(i) and 4(e)(3). Rule 4(b)(i) states, "[i]f the summons and complaint are not timely served, the action shall be dismissed, without prejudice on application of any party or upon the court's own initiative."[36] However, rule 4(e)(3) states, "[f]ailure to make proof of service does not affect the validity of the service."[37] At a minimum, before a court dismisses an action for untimely service under rule 4(b)(i), it must first give the plaintiff an opportunity to respond. A plaintiff facing a challenge to the timeliness of service may argue that service was valid despite a failure to provide proof of service or that the opposing party waived service of process under rule 12(h) of the Utah Rules of Civil Procedure. Under rule 12(h), a party waives its right to challenge the sufficiency of service of process if it did "not present[]" that claim "either by motion or by answer or

---

[33] *See* UTAH R. CIV. P. 4(b)(i).

[34] *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035.

[35] *Bd. of Educ. v. Sandy City Corp.*, 2004 UT 37, ¶ 9, 94 P.3d 234 (internal quotation marks omitted); *see also Arbogast Family Trust,* 2010 UT 40, ¶ 18.

[36] UTAH R. CIV. P. 4(b)(i).

[37] *Id.* 4(e)(3).

reply."[38]   Indeed, these are the very arguments Ms. Gardiner now presents on appeal because she was not given the opportunity to raise them below.   We interpret rule 4(b)(i) to allow a court to raise the issue of sufficiency of service of process upon its own initiative, but it may not dismiss an action on that basis without first giving the plaintiff notice and an opportunity to raise defenses.[39]   Accordingly, we hold that the district court improperly dismissed the action under rule 4(b)(i) without giving Ms. Gardiner an opportunity to respond.   We now turn to the merits of the question and determine that service was proper.

2. *Ms. Gardiner Waived Service of Process on the Estate of Mr. Vanderwerff in Her Capacity as Personal Representative of the Estate*

¶ 28   Rule 4(b)(i) of the Utah Rules of Civil Procedure requires that in every action, a "summons together with a copy of the complaint shall be served no later than 120 days after the filing of the complaint."   A petition for a marriage declaration ordinarily must be served on the putative spouse—in this case, Mr. Vanderwerff.   Unfortunately, Mr. Vanderwerff was already deceased when Ms. Gardiner petitioned to have their relationship declared a marriage.   Courts cannot exercise personal jurisdiction over individuals who have died.[40]   Instead, a party must "obtain appointment of a personal representative to give a trial court personal jurisdiction over the estate" and then serve the personal representative.[41]

---

[38] *Id.* 12(b)(5) & (h).

[39] This interpretation is in line with the federal rule that reads: "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own *after notice to the plaintiff*—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m) (emphasis added).

[40] *Berneau v. Martino*, 2009 UT 87, ¶ 18, 223 P.3d 1128.

[41] *Id.* (internal quotation marks omitted); *see also* UTAH CODE § 75-3-602 ("Notice of any proceeding shall be delivered to the personal representative . . . .").

¶ 29 At the time Ms. Gardiner filed the marriage petition, Mr. Francis had been appointed the special administrator of Mr. Vanderwerff's estate, and Ms. Gardiner was aware of that appointment. Ms. Gardiner did not serve the petition upon Mr. Francis—though she should have. Nevertheless, Mr. Francis had actual knowledge of the marriage petition, and attempted to intervene both in his individual capacity and in his capacity as the estate's special administrator. In addition to his motion to intervene, Mr. Francis filed a memorandum objecting to Ms. Gardiner's marriage petition—and at no point raised a challenge to the sufficiency of service. The court never ruled on Mr. Francis's motion, however, because it was never submitted for decision. Then one month before the adjudication of the marriage, and within 120 days from the filing of the marriage petition, Mr. Francis stipulated to his own removal as special administrator and Ms. Gardiner's appointment as personal representative of the estate.

¶ 30 As a result, at that point in the marriage case, Ms. Gardiner, as personal representative of the estate, would have been required to serve herself with her own marriage petition.[42] The Cousins argue that this apparent conflict invites fraud and creates a nonadversarial proceeding, and is thus against sound public policy. They also argue that Ms. Gardiner's conduct violated her fiduciary duties as personal representative.

¶ 31 While we recognize the Cousins' public policy concerns, we note that being a personal representative and a potential beneficiary of a will does not create a per se conflict of interest that constitutes fraud.[43] Generally, for there to be a serious

---

[42] UTAH CODE § 75-3-602 ("By accepting appointment, a personal representative submits personally to the jurisdiction of the court in any proceeding relating to the estate that may be instituted by any interested person. Notice of any proceeding shall be delivered to the personal representative . . . ."); *see also id.* § 75-3-608 (indicating that a personal representative whose appointment has not been terminated has the "authority to represent the estate in any pending or future proceeding").

[43] *Farnsworth v. Hatch*, 151 P. 537, 541 (Utah 1915) ("[A] person may not be disqualified merely because he claims property which is also claimed by the estate.").

conflict of interest that would justify removal, the personal representative must commit some negligent act or mismanagement of the estate that leads the heirs to sue. [44] Regardless, whether Ms. Gardiner breached her fiduciary duties as personal representative of Mr. Vanderwerff's estate is not the issue before us—the Cousins did not directly bring this claim—and therefore we must simply determine whether service was proper.[45]

¶ 32 An alleged breach of fiduciary duty does not render otherwise proper service invalid—it is an independent claim.[46] The rules required Ms. Gardiner to effectuate service or a waiver of service on the estate of Mr. Vanderwerff by serving the

---

[44] *Id.* ("But when the claims of the representative are resisted by the estate, and litigation ensues, then the interests between the estate and the representative may become so conflicting and so serious that it is no longer proper for the representative to remain in office."); *In re Bogert's Estate*, 290 P. 947, 949 (Utah 1930) (explaining that personal representative was properly removed where "she turned over to her then attorney certain Liberty bonds of the value of $1,500 . . . and that owing to her incompetency, negligence, and carelessness the attorney kept $500 thereof which he has failed to return and . . . . she is incompetent to act as executrix of the estate, and has neglected, *mismanaged*, and wasted the assets of the estate").

[45] We note that under the Utah Uniform Probate Code, with some exceptions, "any transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate." UTAH CODE § 75-3-712. However, because the Cousins did not bring a claim under this statute or argue it on appeal, we do not address it, nor will we analyze any related questions, such as whether a petition for a declaration of unsolemnized marriage under Utah Code section 30-1-4.5(1) falls within the definition of a "transaction" for purposes of this provision of the Utah Uniform Probate Code.

[46] *See Norman v. Arnold*, 2002 UT 81, ¶ 35, 57 P.3d 997 ("In Utah, a claim for breach of fiduciary duty is an independent tort . . . .").

personal representative of the estate.[47] Ms. Gardiner, acting in her capacity as personal representative, waived such service within 120 days of the filing of her petition. Therefore, Ms. Gardiner satisfied rule 4 of the Utah Rules of Civil Procedure and the court erred when it dismissed her petition for insufficient service of process.

¶ 33 The district court erred when it dismissed the action on its own initiative under rule 4(b)(i) of the Utah Rules of Civil Procedure without notice to Ms. Gardiner and without affording her the opportunity to object—and the court erred because service was in fact proper. Because Mr. Vanderwerff was deceased at the time of the petition, Ms. Gardiner was required to effectuate service of process on—or obtain a waiver of service from—his estate. Ms. Gardiner waived service on the estate in her capacity as personal representative before the expiration of 120 days from the filing of the marriage petition, and therefore service was valid.

## CONCLUSION

¶ 34 In sum, we hold that the district court erred when it allowed the Cousins to intervene, set aside the declaration of marriage, and then dismissed the case. Where a petitioner seeks a posthumous determination of an unsolemnized marriage, he or she must serve process upon the estate of the deceased. In this case, Ms. Gardiner waived service on behalf of the estate as the personal representative of Mr. Vanderwerff. The court erroneously concluded that Ms. Gardiner failed to validly effectuate service. Because the court allowed the Cousins to intervene, granted their rule 60(b) motion to set aside the marriage declaration, and then dismissed the case on its own

---

[47] *See* UTAH R. CIV. P. 4(d)(1)(A) (providing that personal service shall be made "by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process"); Utah Uniform Probate Code, UTAH CODE § 75-3-602 ("Notice of any proceeding shall be delivered to the personal representative . . . ."); *see also Garcia v. Garcia*, 712 P.2d 288, 290 (Utah 1986) ("The final method by which process may be served . . . is by delivering a copy to an agent authorized by appointment or by law to receive service of process." (internal quotation marks omitted)).

initiative all on the basis of that error, we reverse those decisions and reinstate the September 13, 2010, declaration of marriage between Ms. Gardiner and Mr. Vanderwerff.

————————